**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-cr-00040-TNM** |
| | ) | |
| **PATRICK MCCAUGHEY, III, et. al.,** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT DAVID MEHAFFIE'S SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

Defendant David Mehaffie, through his undersigned Counsel of Record, William L. Shipley, submits this Sentencing Statement in advance of his sentencing hearing set for February 24, 2023.

Because the Court was the finder of fact at trial, Defendant Mehaffie will not engage in a lengthy review of the evidence presented at trial. But the following is the general arc of the factual narrative developed during both the Government's case-in-chief and the defense case.

Defendant Mehaffie traveled from his home in Dayton, Ohio, to Washington D.C. with his wife and two of his six adult children. Defendant Mehaffie came for the purpose of seeing in-person what he expected to be the last public speech given by former President Donald Trump while in office. Defendant Mehaffie had been active in political causes earlier in his adult life, and had attended protest events in and around his hometown of Dayton. He encouraged his adult children to come with he and his wife to Washington D.C. for the purpose of trying to inspire them to take more interest and become more active in political and civic matters.

Defendant Mehaffie testified that he had no intention prior to attending the speech to walk to the Capitol and participate in whatever protest activities were planned for that location following the rally. It was only the comments by former President Trump, and the movement of the large crowd from the Ellipse in the direction of the Capitol which prompted Defendant and his family to follow. Because they were on the extreme west side of the Ellipse during the rally and speeches, and the Capitol was to the east of the rally location, they

were at the very rear of the large crowd of rally attendees who headed towards the Capitol.

In the verdict read from the bench, the Court focused on it viewed as Mr. Mehaffie's conduct starting around 2:52 p.m., when he took up the elevated position on the wall outside the Lower West Terrace tunnel.  Because all the verdicts reached by the Court turn on facts as the Court found during that time period, Mr. Mehaffie requests that those facts as read by the Court be deemed the "Offense Conduct" in this case, and that any information in the PSR outside that time frame be deleted from the "Offense Conduct" section of the PSR – with the exception of the facts set forth regarding the Capitol building and Capitol grounds being restricted areas on January 6, 2021 while Mr. Mehaffie was present.

## I.    U.S.S.G. CALCULATIONS:

### A.  Guideline Section Applicable to Offense(s) of Conviction

Mr. Mehaffie was convicted of two felony charges – Count 12, charging him with a violation of 18 U.S.C. Sec. 111(a)(1) and (2); and Count 35, charging him with a violation of 18 U.S.C. Sec. 231(a)(3).

Mr. Mehaffie was also convicted of two misdemeanor violations of Title 40, U.S.C. Sections 5104(e)(2).

The parties and the Probation Officer agree that the applicable Guideline is Sec. 2A2.4 for both Counts 12 and 25.

Under Sec. 2A2.4, the base offense level is 10.  There are no applicable enhancements, and the adjusted offense level is 10.

With a Criminal History Score of 0, Mr. Mehaffie is in Criminal History Category I.

**The Advisory Guideline Range is 6-12 months**.

    B. <u>Objections to the Guideline Calculation in the PSR</u>.

The draft PSR applied Guideline Section 2A2.4.  In its informal objections to the draft PSR, the Government urged the Probation Officer to apply the cross-reference from 2A2.4(c), which directs that Sec. 2A2.2 is to be applied in cases involving "aggravated assault."

The final PSR adopted the Government's position.  As a result, the Probation Officer's Guideline analysis determined the Adjusted Offense Level to be 23. With a Criminal History Category of I, the resulting advisory range was 46-57 months in custody.

This calculation, premised upon the application of the cross-reference in Section 2A2.4(c), is clearly erroneous.

    1. <u>The Cross-Reference in Section 2A2.4(c) is inapplicable.</u>

In the draft PSR, the Probation Officer applied U.S.S.G. Sec. 2A2.4 to both felony counts.  The Government made an informal objection with respect to Count 12, arguing that the cross-reference set forth in Sec. 2A2.4(c) applied, and that the cross-reference instructs that Sec. 2A2.2 is to be applied in this case.

In doing so, the Probation Officer was urged to adopt a legally dubious statutory interpretation pushed by the Government, has now confused two principles of statutory interpretation.

First, the structure of Section 111(a) establishes misdemeanor and felony versions of a wide range of prohibited conduct, depending on the presence or absence of a one or more specific aggravating factors.

The second – not involved here -- is that some specific crimes are defined by statute in both misdemeanor and felony versions.  One example is "simple assault" and "aggravated assault," where both versions have the common feature of "assault" as the foundation.

What the Government urged, and what the Probation Officer has now mistakenly done, is take the latter principle and apply it to the former circumstance.

Section 111(a) reads as follows in pertinent part:

> (a) In General.—Whoever—

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; …

> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

The statutory text makes no reference to "aggravated assault."  What it does is define two circumstances in which broadly stated offense conduct changes from a misdemeanor to a felony – "physical contact with the victim" or "intent to commit another felony…."  Any felony under Sec. 111(a) must involve one of these two features.  This is markedly different from defining misdemeanor and felony versions of a specific criminal act.

There is no dispute that the Guideline Provision that applies is Sec. 2A2.4.  See Paragraph 42.   But the Probation Officer then applied 2A2.4(c) with regard to the "cross-reference."   Subsection (c) reads: "If the *conduct* constituted *aggravated assault*, apply §2A2.2 (Aggravated Assault)."  [Emphasis added].

The issue presented is whether "conduct" constituting "aggravated assault" can be established by conduct not involving any "assaultive" behavior but with only the "aggravating" feature present.  In the "Alice in Wonderland" analysis advanced by the Government, apparently it can.

"Aggravate assault" is not defined in Sec. 2A2.4, but it is defined in the commentary to Section 2A2.2.  The definition reads:

> "Aggravated assault" means a felonious <u>*assault*</u> that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony.[1]

The obvious problem with the Government's position is that the existence of an "aggravated assault" is conditioned upon the factual existence of a felonious "assault."

The Court's findings of fact underlying its verdict expressly found that Mr. Mehaffie was not criminally liable for any assaultive conduct either as a principal or as an aider and abettor.

---

[1] Sections 2A2.2 and 2A2.4 are both indexed by the guidelines to 18 U.S.C. Sec. 111.  Since the Guidelines apply only to felonies, the indexing can only be based on the felony version of the statutory offense.  The only "felony" version of a "non-assault" violation of Sec. 111 is one with the "intent to commit another felony."  But if the cross-reference moves every such offense to Sec. 2A2.2, then the indexing of the 2A2.4 to Section 111 is meaningless as there is no "felony" version of Sec. 111 that is not "aggravated assault."

As the Court noted during an exchange with Counsel for Mr. Mehaffie during closing argument, the language of Section 111(a) reaches a broad range of conduct in addition to what might be considered "assault" under common law.  In response to a comment from Mr. Mehaffie's counsel about distinguishing between obstructive behavior and assaultive behavior on the question of guilt or innocence, the Court asked rhetorically "Why wouldn't that be a matter for sentencing?" knowing Counsel would see the answer as self-evident – which he did.

But the Probation Officer – at the urging of the Government – has now taken away that distinction by making a conviction with factual finding of nonassaultive behavior into a case of "aggravated assault" at sentencing by applying the cross-reference where the requisite factual premise is missing.

In reading its verdict on Count 12 into the record the Court in no fewer than four instances appeared to choose its words very carefully in describing Mr. Mehaffie's criminal liability via aiding and abetting, each time studiously avoiding the word "assault" to characterize his criminal responsibility, including this observation:

> I note that the Government has not argued [David Mehaffie] wanted the crowd to assault the officers. Indeed, there was evidence of him repeatedly telling people not to hurt the officers and of him taking poles and other potential weapons away from the rioters.

Transcript of Verdict, Sept. 13, 2022, p. 36, lns 3-7.

The Court expressly found as a factual matter that Defendant Mehaffie did not aid and abet the "assault" of any law enforcement officer, but that he

could not "escape liability for the nonassaultive conduct, including resisting, imposing, and interfering with officers." Id. at p. 36, lns 9-11.

With that factual record, return to the Sec. 2A2.4(c) cross-reference and the definition of "aggravate assault" as it relates to the "conduct" of this case. As noted above, the cross-reference applies "If the _conduct_ constituted aggravated assault."

The "conduct" of Defendant Mehaffie did not involve any assault – it was a "nonassaultive" violation of Sec. 111(a) as explicitly stated by the Court in its verdict.  Given the plain meaning of the unambiguous terms of the Sec. 2A2.4(c), the subsection and cross-reference therein is not applicable.[2]

   2.  Civil Disorder cannot be "Another Felony" for Purposes of the Cross-Reference at §2A2.4(c)(1)

The Court expressly stated in its verdict that the same conduct which supported the guilty verdict on Count 12 also established the Mr. Mehaffie's guilt as to Count 35 for "Civil Disorder."   Mr. Mehaffie contends that the same offense conduct establishing two simultaneous crimes does not meet the requirement that there be an intent to commit "another felony" that would trigger the cross-reference in Sec. 2A2.4(c).

This specific issue was considered by Judge Amy Berman Jackson at the sentencing hearing in United States v. Hamner, 21-cr-689:

> It strikes me that if the Commission is asking: Did you commit the assault with the intent to commit some other offense? It didn't mean with the intent to commit that exact same assault, just charged differently.

---

[2] The inapplicability of the cross-reference is further underscored by the fact that the numerous enhancements under Sec. 2A2.2 almost all involve either bodily injury to a victim, acts of violence by the defendant, or the use of a weapon or other dangerous instrument in connection with the offense.  None of those are applicable to non-assaultive offense conduct that violates Sec. 111(a).

They could have easily defined 'another offense' as any offense with any different elements that's a different offense, but they didn't.

It's also important to note that the cross reference says you go to aggravated assault if the assault on the police officer involved the intent to commit another felony, not the same intent needed to satisfy the elements of another felony, not that it was committed during the commission of another felony. This suggests that the guideline is meant to cover just the situation in the cases that you cited, where the assault on the police officer is intended to facilitate or further or advance or succeed in the commission of or evasion of apprehension for a second, different crime.

Sentencing Transcript, <u>United States v. Hamner</u>, 1:21-cr-689, p. 20:21-25, p. 21:1-11.3.

As expressed by her, and as she ultimately applied it in <u>Hamner</u>, Judge Jackson found that the "intent" to commit "another felony" could not be the same "intent" as found with the first felony.  Two crimes committed simultaneously, found based upon the same *mens rea* and *actus reus,* cannot be both the felony and required "another felony" to trigger the cross-reference in Section 2A2.4(c).

If Judge Jackson's view were to be applied by the Court here, the fact that the same conduct underlies both the Sec. 111(a) conviction and the Sec. 231 conviction means that the latter is not "another felony" as contemplated in the Guidelines as it is not a latter or subsequent crime with a separate *mens rea* from that found for the Section 111(a) offense.

Faced with a similar issue in <u>U.S. v. Hamner</u>, Judge Berman Jackson noted "at best, the cross reference is ambiguous. And under such circumstances the Rule of Lenity requires the adoption of the definition that favors the defendant." Id. at p. 24:1-3.

For Mr. Mehaffie, the drastic difference in his guideline calculation under the two respective Guideline Sections must be noted.   The base offense level increases by 4; and injury enhancement of +3 levels only applies under Section 2A2.2; and the official victim enhancement only applies under Sec. 2A2.2, adding another 6 levels.

Sec. 2A2.2                                    Sec. 2A2.4

| Base Offense Level 14 | Base Offense Level 10 |
|---|---|
| Bodily Injury to Victim:  +3 | N/A |
| Official Victim:  +6 | N/A |
| Adjusted Offense Level: 23 | Adjusted Offense Level: 10 |
| Crim. Hist. Cat. 1 | Crim. Hist. Cat. 1 |
| GL Range:  46-57 months | GL Range: 6-12 months<br>(Zone B -- eligible for probation) |

### 3.  The Sentencing Guidelines' Definition of "Aggravated Assault" is Unreasonable and Not Entitled to Deference

The definition of "aggravated assault" is found in the commentary to the guideline rather than the guideline itself.  This distinction is important because the commentary to the Sentencing Guidelines is not accorded the full force of the guideline, but rather is considered as "an agency's interpretation of its own legislative rule." Stinson v. United States, 508 U.S. 36, 44 (1993). This Circuit has said that the Sentencing Guideline's application notes do not qualify for deference under Stinson if they "expand[] rather than interpret[] the Guideline." United States v. Winstead, 890 F.3d 1082, 1091 (D.C. Cir. 2018).  Further, the Supreme Court recently stated  there are important limits to the deference

courts give to an agency's interpretation of its own rules. See generally <u>Kisor v.</u>
<u>Wilkie</u>, 139 S. Ct. 2400, 2424-2418 (2019).

To be granted deference the agency's interpretation must be of a
regulation that is genuinely ambiguous. Kisor, 139 S. Ct. at 2415.  Genuine
ambiguity cannot be determined based solely on the plain language of the
regulation.  Instead, courts must exhaust all the "traditional tools" of
construction, including consideration of the text, structure, history and
purpose of the regulation. <u>Id</u>. (citations omitted).

The United States Sentencing Commission created three separate
guidelines for Aggravated Assault (§2A2.2), Assault (§2A2.3) and Obstructing or
Impeding Officers (§2A2.4).  Congress created a structure to the federal statute
for "Assaulting, Resisting, or Impeding Certain Officers" 18 U.S.C. § 111, that
includes three degrees of criminal responsibility:  1) simple assault, a
misdemeanor punishable by not more than 1 year; 2) conduct including
physical contact with an officer, or the intent to commit another felony,
punishable by up to 8 years; and offenses involving a dangerous weapon or
bodily injury, punishable by up to a maximum of 20 years.  The first two are
found in Sec. 111(a), and the third is found in Sec. 111(b).    Congress wrote
the Subsection 111(b) and explicitly titled it "Enhanced Penalty" which applies
to Congress thus made a clear distinction in both the structure of the statute
and the escalating punishments.  The only offenses that qualify for an
"enhanced penalty" of up to 20 years in prison are those that involve a
dangerous weapon or bodily injury.  While physical contact and the intent to
commit another felony make a defendant subject to a greater sentence than

simple assault, the distinction is nothing more than that between a
misdemeanor and felony, not an "aggravated" and "unaggravated" version of
those crimes.  This structure strongly suggests that it is 111(b) that is the
"aggravated" form of the felony, not a felony version of the 111(a) offense.

These distinctions, enacted by Congress, provide important context when
determining the extent to which the Commission in defining "aggravated
assault" in the commentary has provided clear and meaningful <u>guidance</u> to this
Court, and what weight should be afforded to that definition.

The commentary characterizes four categories of what the Commission
deems to be aggravated assault. Three of them are directly tied to the
distinction Congress established in the statutory framework via Sec. 111(b): 1)
use of a dangerous weapon, 2) bodily injury, and 3) strangulation, which by its
nature carries a serious risk of bodily injury. See USSG § 2A2.2, Application
Note 1. The fourth category – intent to commit another felony – is an outlier
because it is unrelated to bodily injury or the risk of it. The Sentencing
Commission simply elevated intent to commit another felony into the next more
serious category despite the distinctions made by Congress within the statute
itself. The Sentencing Commission, then, made the "intent to commit another
felony" prong of 18 U.S.C. 111(a)(1) tantamount to the aggravated assault
crimes contained in the "enhanced penalty" prong of 18 U.S.C. § 111(b), even
though the statutory maximums for the different prongs vary by 12 years.
Notably, and without explanation, the Sentencing Commission did not elevate
the "physical contact" prong of 18 U.S.C. § 111(a)(1). There is simply no
justification for the Sentencing Commission to treat the two prongs of 18

U.S.C. § 111(a)(1) differently from each other and doing so is in clear contravention of the distinctions created by Congress. For these reasons, USSG § 2A2.2 is not genuinely ambiguous and thus no deference should be given to the commentary that elevates the intent to commit another felony to an aggravated assault. The definition of aggravated assault can be determined directly through the traditional tools of construction by examining the relevant statute directly.

    4.  <u>The Court Should Use USSG § 2A2.4 for the Base Offense Level</u>

Section 2A2.4 is clearly the appropriate guideline for Counts 12.  It is titled "Obstructing or Impeding Officers."  This Court's findings of fact expressly found Mr. Mehaffie guilty of aiding and abetting others in "resisting, opposing, and interfering with officers."  As noted above, the Government did not argue that Mr. Mehaffie had aided and abetted "assault" of the officers – it could not because the uncontested facts as noted by the Court was that he made numerous attempts to prevent that from happening.  Thus, there would have been a failure of proof on *mens rea* had the Government pursued that as its basis for criminal culpability.

This common-sense approach to the facts and the Guidelines shows that Sec. 2A2.4 is the guideline that most appropriately fits the facts of this case. Even if the Court were to find §2A2.2 is genuinely ambiguous, and the Commentary definition was instructive, an agency's interpretation must still be "reasonable" for it to control.  Kisor ,139 S. Ct. at 2415 (citation omitted). There the Supreme Court was clear: "And let there be no mistake: That is a requirement the agency can fail." Id. at 2416.

The Sentencing Commission's definition fails the reasonableness test by making assaults with the intent to commit another felony equivalent to assaults that included use of a deadly weapon or risked bodily injury. This is an unreasonable interpretation in light of the statutory framework and common- sense. An intent to commit another felony, by itself, does not make an assault equally serious as one that creates risk of bodily injury or employed a deadly weapon.

B. Bodily Injury Enhancement – Sec. 2A2.2(b)(3)(A)

In the event this Court does not find in favor of Mr. Mehaffie, and determines that Sec. 2A2.2 is the applicable guideline, Mr. Mehaffie objects to the 3-level enhancement for bodily injury to the victim (USSG § 2A2.2(b)(3)(A)).

In Paragraph 43 of the PSR, the Probation Officer assigns a 3-level enhancement to Mr. Mehaffie pursuant to USSG § 2A2.2(b)(3)(A) because others in the tunnel injured Officer Hodges.  Paragraph 43 makes reference to "relevant conduct" and "jointly undertaken criminal activity" in justifying the application of this enhancement.  Both concepts are the subject subject of commentary in U.S.S.G. Section 1B1.3(a)(1)(A) and (B).  That Subsection reads as follows:

> (a)    Chapters Two (Offense Conduct) and Three (Adjustments).  Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> (1)(A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)      in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i)      within the scope of the jointly undertaken criminal activity,

(ii)      in furtherance of that criminal activity, and

(iii)      reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

Officer Hodges was injured as a result of the assault committed upon him by co-Defendant McCaughey.  The Court's factual findings in support of its verdict on Count 12 as to Mr. Mehaffie expressly determined that he did not aid and abet "assaultive" conduct by other rioters.  On that basis, the enhancement does not apply under Subsection (a)(1)(A).

In Subsection (a)(1)(B), "jointly undertaken criminal activity" is defined in the parenthetical to mean "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy."  The factual record does not support a finding of a "plan, scheme, endeavor or enterprise undertaken … in concert with others."  At best the record reflects a disparate group of strangers who arrived in the same place at the same moment, and spontaneously engaged in an effort to accomplish the same goal – getting past the police line in the Lower West Terrace tunnel in

order to gain access to the interior of the Capitol.  There was no "plan" or "scheme" involved.

        C.  <u>Aggravating Role in the Offense</u>:

The Government seeks an enhancement for aggravating role in the offense under U.S.S.G. Sec. 3B1.1(c).   That section reads:  "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

While the Court found that Mr. Mehaffie was giving hand signals and verbal directions to rioters who were moving towards entering the tunnel, no one was obligated to respect or follow Mr. Mehaffie's signals and directions. His participation in that respect was spontaneous and self-appointed.  On that basis, Section 3B1.1(c) is not applicable.


II.     <u>RELEVANT FACTORS UNDER SECTION 3553</u>.

Mr. Mehaffie will not belabor the "History and Characteristics of the Defendant" in this Statement.  Mr. Mehaffie testified for several hours at his trial, and provided significant biographical information as part of that testimony.  The PSR accurately captures Mr. Mehaffie in most respects, as supplemented by Mr. Mehaffie's informal responses to the draft version of the PSR which the Probation Officer has included in the appropriate places.

Mr. Mehaffie is 63 years old and has been happily married to his wife Kymberly for 43 years.  Together they have raised six children – four boys and two girls -- who are now all adults.  They are also grandparents to 13 grandchildren.

The Mehaffies were active in their younger adult years in political causes and non-violent protest activities based on his strong religious beliefs. This activism often manifested itself in non-violent civil disobedience protest activities, for which Mr. Mehaffie was twice arrested. He was also active in politics, including serving as campaign manager in an unsuccessful campaign for Congress by a friend.

But as his family grew Mr. Mehaffie shifted his attention to providing for them by starting a family owned construction business which he operated for more than 35 years. That business – with a changed emphasis – is now owned and operated by his four adult sons. Mr. Mehaffie's last business endeavor was a poorly timed – due to COVID – effort at opening a gym in his hometown early in 2020.

Mr. Mehaffie, his wife, and two of his adult children came to Washington DC on Janaury 6 not to protest or engage in any activities at the Capitol. They came to watch in person what he thought would be the final public speech by former President Donald Trump in his capacity as such. It was after the speech, and in reaction both to the comments of Trump and the movement of the crowd that the family made the decision to walk to the Capitol for whatever other events might be taking place there.

That was the extent of Mr. Mehaffie's planning which ultimately ended up with him perched on the outside of that tunnel giving signals and directions to rioters as they went in and out.

Every step between stepping over the small wall as captured on video, up to and including the moment the locked glass doors were broken by another

17

protester, was the result of Mr. Mehaffie's curiosity about what was taking place at the Capitol, and what was taking place inside the Capitol.  His curiosity was first piqued by the large crowd as the approached the Capitol grounds, and then by the fact that it was obvious that people were inside the Capitol already when he arrived at the building.  He testified that he ascended to the level of the inaugural stage, and then entered the Lower West Terrace tunnel out of curiosity and a desire to go inside the Capitol where others already were.  He did not know when he entered the tunnel that there were locked doors that would block his path.  By the time he knew that, a larger crowd had already begun to fill the tunnel behind him.

What has always been lacking in the evidence in this case – because it doesn't exist – is any evidence that Mr. Mehaffie had any desire or intention to interfere or obstruct the official proceedings that were taking place inside the Capitol.  The Court's verdict acquitting him on that charge was based upon a lack of such evidence.  That's not because the Government did not look for that evidence.  What it failed to find – because it did not exist – was the kind of social media or past communications by Mr. Mehaffie filled with election rhetoric that it has used in so many other cases as direct or circumstantial evidence of intent.

As the Court stated in its verdict, the Court's focus on Mr. Mehaffie's conduct was on that period of time after he took up the elevated position outside the tunnel, and his conduct thereafter.

Mr. Mehaffie made the mistake of "choosing" a side when the conflagration broke out in the tunnel between the police safeguarding that

entrance and the protesters trying to enter the Capitol.  The correct choice at that moment would have been to not choose either side, but rather to leave.  By not making the right choice, he now stands convicted of two federal felonies.

But that lapse in judgement should not redefine him in the eyes of the Court for purposes of sentencing.  He remains the same man who went into the tunnel.  A father and grandfather, a retired businessman in the community in which he has lived his entire life, a law-abiding citizen who always acted on his personal beliefs and convictions, and a responsible adult who in many ways – not all – endeavored to prevent and hold-down the level of violent engagements between the police and rioters.  The Government opted to not show the Court much of the video following the first successful effort by the Police to eject everyone from inside the tunnel just at approximately 3:30 p.m. The Court did see what followed were efforts by Mr. Mehaffie and a handful of others to persuade the crowd to engage in only peaceful protests – repeatedly urging the mass of people outside the tunnel at the inaugural stage level to simply sit down in a time-honored tradition of non-violent civil disobedience to demonstrate their views.  Given the disparity in numbers, the police at the front of the tunnel were satisfied with that stalemate, as they knew that eventually the protesters would have to leave.  They would get hungry or thirsty, nature would call, or it would just get darker and colder outside the Captiol building where they were at.

That stalemate did not last very long as others in the crowd were unwilling to go along with Mr. Mehaffie's idea.  When that happened, Mr.

Mehaffie departed as quickly as he was able to get through the massive crowd and find his family.

Mr. Mehaffie expressed regret for his conduct during his testimony.  Mr. Mehaffie will address the Court directly at sentencing, specifically observations made by the Court in its verdict read from the bench.

CONCLUSION

The appliable Guideline is Sec. 2A2.4.

The base offense level is 10.

There are no applicable enhancements.

Mr. Mehaffie has no criminal history points, and is in Criminal History Category 1.

The advisory guideline range is 6-12 months.

Because that is in Zone B of the Sentencing Table, he is eligible for a sentence of probation if that sentence includes a term of home or community confinement of at least 6 months.

Mr. Mehaffie requests a sentence of no greater than 6 months home confinement, followed by a term of probation of whatever duration the Court deems necessary under Sec. 3553, as well as a community service obligation to as deemed appropriate by the Court.  As noted in Mr. Mehaffie's PSR, he along with his sister are the primary care givers for his elderly mother.  Mr. Mehaffie is the primary caregiver during daytime hours while his sister is working. Home confinement will enable him to continue serving in that role.

Dated: February 18, 2023                    Respectfully submitted,

20

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*